SADIE LUDERITZ, petitioner,

*v.*

WILLIAM LUDERITZ.

[Heard September 4th, 1917. Determined October 27th, 1917.]

1. In a divorce suit for the cause of adultery, the charge must be established by evidence that will satisfy the human mind and leave the careful and guarded judgment of the court free from conscientious and perplexing doubts.

2. *Culver* v. *Culver, 38 N. J. Eq. 163,* approved and followed.

---

On final hearing on petition for divorce.

Mr. *Clarence L. Cole,* for the petitioner.

Mr. *Oliver T. Rogers,* for the defendant.

LEAMING, V. C.

The testimony in this case was first concluded June 7th, 1917. I then stated to counsel that my views were that while petitioner had clearly sustained the burden of proof, I was unable to reach the conclusion that defendant's guilt could be said to have been established beyond a reasonable doubt. In these circumstances I thought it my duty to call for additional evidence; counsel then agreed to submit such additional proofs as could be procured and the case was subsequently reopened and additional evidence offered in behalf of the respective parties. I have since ordered a transcript of all of the testimony and given it careful study.

The difficulty which confronted me was the fact that adultery is a crime; from that circumstance the view has long been entertained that to justify a decree of divorce for adultery the evidence must establish the charge with practically that degree of certainty which is required to justify conviction in a criminal case. That view was given expression by Justice Van Dyke, in behalf of our court of errors and appeals, in the following language:

"The charge made by the complainant, if true, is known to our law as a crime; consequently this prosecution partakes strongly of the nature of a criminal proceeding, so much so as to place the complainant under the necessity, not only of placing a decided preponderance of testimony in favor of the charge, but of proving it to the satisfaction of this court beyond a reasonable doubt. I do not mean to say that it must be done by such an amount of overwhelming and unmistakable evidence as to render it impossible to be otherwise, but the evidence must be such as to satisfy the human mind, and leave the careful and guarded judgment of the court, free from any conscientious and perplexing doubts as to whether the charge be proved or not. If, after a careful examination of all the competent testimony, such doubts remain immovable, it is clearly our duty to give the

defendant the benefit of such doubts, and to refuse the prayer of the complainant." *Berckmans* v. *Berckmans, 17 N. J. Eq. 453.*

The test, as phrased in *Culver* v. *Culver, 38 N. J. Eq. 163, 165,* is: "The circumstances must be such as will lead the guarded discretion of a reasonable and just mind to the conviction that the crime has been committed." That requirement, expressed in almost the exact words last above quoted, appears to have been first adopted by the English ecclesiastical courts—*Loveden* v. *Loveden, 2 Hagg. Cons. 1* (at *p. 3*)—and to have since received sanction in repeated decisions in this and other states.

The present inquiry must therefore be whether the evidence of defendant's guilt is such "as to satisfy the human mind, and leave the careful and guarded judgment of the court free from conscientious and perplexing doubts as to whether the charge has been proved or not."

The petitioner charges defendant with adultery with Sarah Freed. For the four years preceding the hearing Mrs. Freed, a divorced woman, has lived in Atlantic City in small apartments rented by her; first at No. 7 North Congress avenue, then at No. 1 Woodbine terrace and then at No. 41 Bartlett avenue. In each of these apartments she has rented rooms to lodgers. The maximum number of bedrooms in either apartment has been three. Defendant has resided with her continuously during all of that time; when she has moved he has accompanied her. The defense is that during all of that period defendant has been a "roomer" in Mrs. Freed's apartments, and nothing more; they both deny criminal or other improper intimacy. No. 41 Bartlett avenue, the third apartment occupied by Mrs. Freed and defendant, consisted of two bedrooms, a dining-room, a kitchen, and a bathroom. One bedroom was occupied by defendant, the other was occupied a part of the time by Mr. and Mrs. Magee; in the dining-room was a cot, on which it is claimed Mrs. Freed always slept except when the bedroom not occupied by defendant was vacant; when that room was vacant it is claimed that she slept there. In order to procure evidence against defendant a detective, employed by petitioner, rented that bedroom and occupied it for one week. At the time the detec-

tive rented the room defendant and Mrs. Freed were, admittedly, the sole occupants of the apartment. That room had been formerly occupied by Mr. and Mrs. Magee but had been vacant for a considerable time and was vacant for a considerable time after it was vacated by the detective.

The detective has testified with positiveness and impressive detail that while he was there Mrs. Freed frequently slept with defendant in defendant's bedroom. His testimony to that effect is detailed in a manner that wholly excludes possibility of mistake on his part. If he has told the truth no further inquiry need be made. But the testimony of a hired detective must always be accepted with great caution; it is uniformly classed as the testimony of one in interest and, like the testimony of both Mrs. Freed and defendant, who have each denied sharing the same bed, carries much less weight than that of a disinterested witness, unless corroborated.

But much of the testimony of the detective is undisputed. Accepting as true that part of his testimony which is undisputed, or has found conclusive corroboration, it discloses with clearness much of the manner in which Mrs. Freed and defendant were living together in the apartments. Their extreme intimacy cannot be doubted. He had lived with her over four years. She addressed him as "Bill." While he professed to merely rent his room and get his meals elsewhere he with frequency ate his meals with her in her kitchen and partook of her food. Often when he would return from his work late at night she would prepare food for him. He engaged her Bartlett avenue apartments for her. Assuming that these and other circumstances which showed their close friendship and intimacy may be said to be reasonably consistent with purity of purpose and conduct, notwithstanding the fact that she knew that he was a married man separated from his wife, it should also be noted that the detective found that she kept her clothing, including underclothes, night-gowns, shoes, &c., in the closet of the room occupied by defendant and in which defendant also kept like clothing. This Mrs. Freed and defendant admitted as to much of her clothing, but explained the fact by giving as a reason the absence of a closet in the dining-room occupied by Mrs. Freed

as a bedroom. The testimony of Mr. and Mrs. Magee was to the effect that during the time they had roomed in Mrs. Freed's apartments they had observed no conduct between her and defendant which had suggested to them improper intimacy. Mrs. Magee also testified that she knew that Mrs. Freed slept in the dining-room; but when asked where Mrs. Freed kept her clothes which were not in use she stated that they were kept in a large closet in the hall where she and Mrs. Freed both kept their clothing. If that statement was true the explanation of Mrs. Freed and defendant as to the extraordinary use made by her of defendant's bedroom closet signally failed. This circumstance of ample closet room in the hall was not disclosed until the last hearing. At that time Mrs. Freed was also recalled to testify further and testified that she had been divorced from her former husband on her application and that the ground of divorce was his desertion. A copy of that divorce record was later received in evidence and disclosed that she was divorced by her husband on the ground of adultery. It was thus disclosed that to shield herself from the court's knowledge that she had been divorced on a charge of adultery Mrs. Freed deliberately testified falsely; accordingly it is impossible to assume that her devotion to truth in other material matters would overpower her impulse to shield herself and defendant from a like charge in this suit; to give her testimony anything like substantial force at this time seems impossible. It should be observed also that the testimony of the detective throughout was of a nature to carry conviction of its truth. So far as consistency of narrative and impressive demeanor upon the witness stand can be accepted as *indicia* of truth those elements go to fortify the detective's testimony.

We are thus brought to the concrete inquiry whether there can properly remain in the careful, guarded and unbiased judgment of a court a reasonable doubt touching defendant's guilt. As is stated in *Berckmans* v. *Berckmans, supra,* it is not necessary that the charge be established "by such an amount of overwhelming and unmistakable evidence as to render it impossible to be otherwise."

In my judgment no reasonable doubt of defendant's guilt can

be said to exist. I believe him guilty. I believe the testimony of the detective and do not believe that of defendant and Mrs. Freed.

I am also impelled to add that I do not believe that a married man, in estrangement with his wife, can thus transfer his home to that of a divorced woman for so long a continuous period of time and become to her the favored companion that defendant has become to Mrs. Freed and enjoy with her such obvious mutual attachments of affection and endless opportunities for wrongdoing afforded by their sole occupancy of apartments for considerable periods of time, and reasonably hope to escape conviction of guilt upon the flimsy and threadbare claim that he has at all times been a mere "roomer." When a defendant has entered a house of ill-fame in company with the object of his affections the possibility of innocent purpose and conduct is practically excluded; the "roomer" theory of defense has the advantage of possibility of innocence of purpose and conduct, and has become a favorite shield of defense in cases of this nature. But the presumptions of innocence afforded by the "roomer" theory are not without appropriate limitations. Where, as in this case, the defendant and the object of his affections have by their surroundings and demeanor so far excluded the appearance of innocence of purpose as to render the conclusion of innocence of conduct inconsistent with human actions under the circumstances and conditions disclosed by the evidence, the "roomer" theory must fail in its force and efficiency. No more accurate or forceful statement of my views upon that subject can be made than that found in an early case in an English ecclesiastical court: "Courts of justice must not be duped. They will judge the facts, as other men of discernment, exercising a sound and sober judgment, on circumstances that are duly proved before them. That a young woman, estranged from her husband, and a young officer, could be living together for months, and at different places, though under the flimsy disguise of separate beds, and that courts of justice should not put, upon such intimacy, a construction which everybody else would put upon it would be monstrous." *Chambers* v. *Chambers, 1 Hagg. Cons. 439* (at *p. 445*).

I will advise a decree of divorce *nisi.*